Jarod Bona (23327)
jarod.bona@bonalawpc.com
Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
858.964.2301 (fax)

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AmeriCare MedServices, Inc., | Case No.: |
| *Plaintiff,* | **Complaint** |
| vs. | |
| City of Anaheim and CARE Ambulance Service, Inc., | JURY TRIAL DEMANDED |
| *Defendants.* | |

Plaintiff AmeriCare MedServices, Inc. ("AmeriCare") alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

The State of California created a scheme by which it and its political subdivisions ensure that California citizens receive the prehospital emergency medical services and transport ("EMS") to which they are entitled. Under that scheme, the state gave its local EMS authorities—subject to supervision and approval by the California Emergency Medical Services Authority ("EMSA")—authority to determine which areas within its jurisdiction should be "exclusive operating areas" subject to a competitive bidding process or grandfathering, and which areas should be non-exclusive operating areas in which multiple qualified providers operate to provide the swiftest emergency response. With the exception of grandfathered areas where the same service provider has been providing service without interruption since January 1, 1981, competition is the state policy.

Defendant City of Anaheim eschewed the State of California's competition policy—and the determinations made by its state and local EMS authorities—and instead conspired with Defendant CARE Ambulance Services, Inc. to monopolize the market and exclude other providers. Although the city did not "contract[] for or provide[]" prehospital EMS as of June 1, 1980, it asserts that it retains control of those services. The city had an informal understanding, and no written contract, with a private ambulance company until 1998. In

1998, the city awarded an exclusive contract to CARE Ambulance Service, Inc. ("CARE")—in conjunction with its own fire department—in direct violation of state law. In doing so, it created an illegal monopoly in violation of Sherman Act Section 2.

In 2013, EMSA notified the Orange County Emergency Medical Services Agency ("OCEMS") that EMSA has conclusively determined that Zone AO1 is a non-exclusive area in which any county-qualified EMS provider is entitled to be placed in rotation upon request because the area did not qualify for the granting of exclusivity.

The city—recalcitrant to ceding control that the State of California has determined should instead be provided in a competitive market—refuses to place Plaintiff AmeriCare into the rotation for AO1. The city falsely claims that it maintains its "rights" under California Health & Safety Code Section 1797.201. But the city never had those rights because it was not contracting for or providing its own prehospital EMS services as of June 1, 1981. *See* Cal. Health & Safety Code § 1797.201. Moreover, regardless of whether the city retained .201 rights, it may only operate as an exclusive operating area if either (a) "a competitive process is utilized to select the provider or providers" or (b) OCEMS "develops or implements a local plan that continues the use of existing providers operating within [the] area in the manner and scope in which the services have been provided without interruption since January 1, 1981." Cal. Health & Safety Code § 1797.224.

The city has not utilized a competitive process and has not carried on with an existing service provider without interruption since

before January 1, 1981. As the state authority making such determinations, EMSA has accordingly determined that the City of Anaheim does not meet either exception for exclusivity.

Defendants established an illegal monopoly with 100% market power and an ability to raise prices above market levels—and are currently double-billing patients—in AO1, while providing minimal quality and speed of service without regard to market demand. In direct contravention of State of California policy, the city displaced all competition in the market for prehospital EMS in the area comprising Anaheim. As a result, consumers of prehospital EMS in the relevant market pay supracompetitive prices and suffer slower response times and lesser quality emergency services than those provided in a competitive market.

This is an action for damages, declaratory, and injunctive relief for monopolization and conspiracy to restrain trade under Sections 1 and 2 of the Sherman Act and certain state law claims.

## JURISDICTION AND VENUE

1. This Court has primary subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 because this action arises under the antitrust laws of the United States.

2. This Court has supplemental jurisdiction over the state law claims of this complaint under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the antitrust claim such that they form part of the same case or controversy.

3.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 15, 22 because Defendants transact business in this district and because a substantial part of the events giving rise to this complaint occurred in this district. More specifically, Defendants monopolized a geographic market within this district.

4.     Defendants are subject to personal jurisdiction in California because (a) Defendant City of Anaheim is a California city with a California address that conducts business in California and (b) Defendant CARE is a California corporation doing business in the State of California.

## PARTIES

5.     Plaintiff AmeriCare MedServices, Inc. is a family-owned, Orange County-based California corporation qualified and licensed to provide emergency ambulance service throughout Orange County. AmeriCare has been serving Orange County since its formation in 1996.

6.     Defendant City of Anaheim is a California charter city with its principal place of business at 200 South Anaheim Boulevard, Anaheim, California.

7.     Defendant CARE Ambulance Service, Inc. is a California corporation with its principal place of business at 1517 West Braden Court, Orange, California.

8.     Defendants and their employees and agents participated personally in the unlawful conduct challenged in this complaint and, to the extent they did not personally participate, they

authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts complained of in this complaint.

9.     Each Defendant acted as the principal of or agent for each other Defendant as to the acts, violations, and common course of conduct alleged in this complaint.

## SUBSTANTIVE ALLEGATIONS

### The Statutory Scheme

10.     Prior to 1980, the law governing prehospital EMS in California was haphazard; cities, counties, and public districts were not required to, and had little guidance or means to, coordinate or integrate their operations.

11.     In 1980, the California legislature imposed a new scheme for the provision of prehospital EMS designed to create a new coordinated system for the provision of prehospital EMS with its passage of the Emergency Medical Services System and the Pre-Hospital Emergency Medical Care Personnel Act.

12.     The act created a new manner of local administration of prehospital EMS, providing two tiers of governance: (1) the EMSA, and (2) the local EMS agency, in this case Orange County Emergency Medical Services ("OCEMS") section of the Orange County Department of Health.

13.     Among the EMSA's duties are the power to review and approve the prehospital EMS plans submitted by local EMS agencies to determine whether the plans "effectively meet the needs of the persons served" and are consistent with the law and Authority guidelines and regulation.

14.     The local EMS agency, on the other hand, has the power and responsibility to provide prehospital EMS throughout its area of responsibility. It develops and submits for approval its plan for prehospital EMS in the area of its responsibility.

15.     The legislative scheme allows a local EMS agency to designate one of two modes for the provision of EMS services in any particular geographic area within its purview: (1) exclusive operating areas and (2) non-exclusive operating areas.

16.     In effect, an exclusive operating area allows the local EMS to create monopolies in the provision of prehospital EMS *provided* that the local EMS uses a competitive process for awarding those monopolies. Cal. Health & Safety Code § 1797.224. The local EMS can also designate an exclusive operating area through "grandfathering" an area in which a particular provider or providers have been operating without interruption since January 1, 1981. *Id.*

17.     In non-exclusive operating areas, prehospital EMS providers compete in an open market. In Orange County, these private ambulance services are subject to a rigorous licensing and qualification process and must provide services according to rates predetermined by OCEMS. AmeriCare is fully licensed and qualified by OCEMS.

18.     Under the scheme, the local EMS agency must define and describe each operating area within its jurisdiction in its local EMS plan submitted to EMSA. It must designate each area as exclusive or non-exclusive.

19.     Mindful that the new prehospital EMS scheme relies on a competitive marketplace that would supplant existing services in some municipalities, the legislature made one narrow exception to the system of local EMS agency control: a municipality that had contracted or provided for its own prehospital EMS as of June 1, 1980 could choose whether to continue administering its own prehospital EMS or to enter into an agreement with the local EMS agency. *See* Cal. Health & Safety Code § 1797.201. Cities that chose to retain their power to administer prehospital EMS colloquially call this power ".201 rights."

20.     But this control does not allow cities to create monopolies by their own fiat. Section 1797.224 allows *only* local EMS agencies such as OCEMS, acting through an EMSA-approved plan, to create exclusive operating areas:

> A local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan. No competitive process is required if the local EMS agency develops or implements a local plan that continues the use of existing providers operating within a local EMS area in the manner and scope in which the services have been provided without interruption since January 1, 1981.

Cal. Health & Safety Code § 1797.224 (West).

21.     The California Supreme Court has explained that while

a local EMS agency's ability to create [exclusive operating areas] may not supplant the [cities'] ability to continue to control EMS operations over which they have historically exercised control[, n]othing in this reference to section 1797.201 suggests that cities . . . are to be allowed to expand their services, or to create their own exclusive operating areas.

*Cty. of San Bernardino v. City of San Bernardino*, 15 Cal. 4th 909, 932 (1997).

22.     Therefore, even where a city retains .201 rights, operating areas can only be designated as exclusive by the local EMS if the city can establish either (1) grandfathering, or (2) that it utilized a competitive process to select its current provider in the last ten years.

23.     Otherwise, the operating area must be designated as a non-exclusive operating area in which restraints of trade imposed by a local government entity are not immune from antitrust liability under the state action doctrine.

24.     Moreover, EMSA and OCEMS have each taken the position that "OCEMS may not delegate its statutory authority to conduct competitive processes for emergency ambulance services" to the cities or other agencies. Accordingly, an exclusive operating area must either be subject to (a) grandfathering, or (b) an OCEMS-administered competitive bidding process. Neither applies here.

## Prehospital EMS in the City of Anaheim

25.     As of June 1 1980, the City of Anaheim had a *de facto*, unwritten agreement with Southland Ambulance to provide emergency ambulance service within Anaheim city limits.

26.     Southland was purchased in 1993 and subsequently passed through the hands of several corporate owners before merging with its successor, American Medical Response, Inc. AMR served as the ambulance service within the city until 1998.

27.     In 1998, the City of Anaheim ceased using its existing provider and granted an exclusive contract to CARE. Its legally and factually untenable position appears to have been that (a) it had .201 rights, and (b) as a result of those .201 rights, it could establish a new monopoly.

28.     OCEMS may only designate and maintain exclusive zones in its local EMS plan—and EMSA will only approve such a designation—if a city can establish one of two criteria: (1) a competitive bidding process was used in the last ten years to contract with the highest ranked bidder, or (2) grandfathering. Under this criteria, OCEMS has determined that only the cities of Brea, Santa Ana, and Westminster could be labeled as city-administered zones enjoying exclusivity under the plan, whether due to competitive bidding or grandfathering.

29.     In May 2013, EMSA determined that AO1 failed to meet either criterion for the exclusive operating area designation under California Health & Safety Code Section 1797.224. EMSA

subsequently approved the OCEMS 2014 Orange County EMS plan with AO1 designated as a non-exclusive operating area.

30.     The city and CARE are joint market participants. The city's fire department provides emergency medical response while CARE provides both response and transport. If a fire-department paramedic assesses the patient and provides at least one intervention, the patient is charged for the city's paramedic response fee as well as that of CARE (and including its transport fees). In other words, in a substantial number of situations, a patient is double-billed for care they receive prehospital.

31.     The city's agreement with CARE allows them to split monopoly profits while allowing additional charges to third-party payors such as Medicare. As part of this agreement, CARE invoices patients twice: (1) on its own invoice for all prehospital EMS services rendered, including a "medical supplies" fee, and (2) on an Anaheim Fire Department invoice for the additional paramedic "response" charge. CARE, in turn, pays the city the extra paramedic "response" charge when applicable and the "medical supplies" fee for every call.

32.     The medical supplies fee alone represents monopoly rents of about $300,000 per year for the city that consumers and payors would not have been charged but for Defendants' conduct.

33.     Additionally, the city profits from a "paramedic membership program" whereby Anaheim residents can pay a $3.00 monthly fee as part of their utility bill to offset the expenses of the fire department's emergency medical care. The fee does not offset any costs billed to program participants by CARE.

34.     Moreover, CARE provides kickbacks to members of city government in the form of campaign contributions with the mutual understanding that the contributions secure CARE's continued role.

35.     The city has refused to place any other private ambulance company in the rotation for service calls, illegally maintaining a monopoly in a non-exclusive zone.

### City of Anaheim Excludes AmeriCare

36.     AmeriCare submitted a written request to OCEMS February 25, 2015 to be placed on rotation within AO1, the non-exclusive operating area comprising Anaheim. OCEMS replied March 18, 2015 directing AmeriCare to contact the city manager for the incorporated city within the zone.

37.     Although OCEMS has the responsibility and authority to administer non-exclusive zones not retained by cities validly exercising .201 rights, OCEMS has entered into agreements in which it allows certain cities to administer, in part, the provision of prehospital EMS within its jurisdiction. OCEMS calls these areas "city administered" and the Orange County attorney has expressly disclaimed that "city administered" is not a determination regarding .201 rights. Instead, "OCEMS does not currently believe the determination of which cities can legitimately claim .201 rights is one to be made by [it]." *See* Ex. A at 23. OCEMS nevertheless continues to assert its sole authority to determine exclusivity because ".201 rights and exclusivity are two different things." *Id.* at 24.

38.     AmeriCare submitted its written request to Paul Emery, interim city manager of City of Anaheim March 19, 2015, explaining

its correspondence with OCEMS and requesting that either the city arrange for AmeriCare to be placed into the prehospital EMS rotation or state a position that it does not have responsibility for the administration of prehospital EMS. Ex. B.

39.     The city sent a scathing response in which it asserted, contrary to well-established law, that it has the authority to designate its own exclusive area and to do so without any competitive process. Moreover, it stated that a city retaining .201 rights "is not required to open up its jurisdiction, on a rotation or any other basis, to additional providers." Ex. C at 35.

40.     But for Defendants' conspiracy to monopolize the market, AmeriCare and other private ambulance providers would have been placed in rotation and patients would have paid lower prices for faster and better service. During periods of higher volume, more ambulances would have been available from other providers and patients would have been stabilized and transported for hospital care more quickly.

41.     AmeriCare lost business as a result of Defendants' actions.

## Claims Limitation Not Applicable

42.     AmeriCare has complied with all applicable presentation of claims to local governments' requirements under California law. The City of Anaheim denied AmeriCare's claim March 14, 2016, and therefore the state law claims for damages are timely filed.

# COUNT I

## Monopolization, 15 U.S.C. § 2

43.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

44.    Section 2 of the Sherman Act, 15 U.S.C. § 2 provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . .

45.    Defendants possess monopoly power in the market for prehospital EMS in the Anaheim area. The city has the power to exclude competition and has exercised that power in favor of itself and CARE, which together hold 100% market power in the area comprising Anaheim.

46.    Through the conduct described herein, Defendants have willfully maintained that monopoly power by anticompetitive and exclusionary conduct. They acted with the intent to maintain this monopoly power, and the illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act.

47.    The market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

48.    AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

49.     AmeriCare has been harmed by Defendants' willful maintenance of their monopoly and their exclusion of all competitors.

50.     Defendants acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS, and therefore are not entitled to immunity under the state action doctrine.

51.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

52.     The Local Government Antitrust Immunity Act, 15 U.S.C. § 36, does not apply because the city is (a) engaging in *ultra vires* acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant.

## COUNT II

## Attempted Monopolization, 15 U.S.C. § 2

53.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

54.     Defendants have willfully engaged in a course of conduct, including anticompetitive and exclusionary actions, with the specific intent of monopolizing the market for prehospital EMS in the area of Anaheim, and there is a dangerous probability that, unless restrained, anticompetitive conditions will occur, in violation of Section 2 of the Sherman Act.

BONA LAW PC
BUSINESSJUSTICE.COM

55.     The market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

56.     AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

57.     AmeriCare has been harmed by Defendants' willful maintenance of the monopoly and their exclusion of all competitors.

58.     Defendants acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS, and therefore are not entitled to immunity under the state action doctrine.

59.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

60.     The Local Government Antitrust Immunity Act, 15 U.S.C. § 36, does not apply because the city is (a) engaging in *ultra vires* acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant.

## COUNT III

## Conspiracy to Monopolize, 15 U.S.C. § 2

61.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

62.     The city and CARE combined and conspired to acquire and maintain monopoly power in the market for prehospital EMS in the area comprising Anaheim, with the specific intent and purpose to

exclude all other competition and monopolize the market for prehospital EMS in the area of Anaheim.

63. Defendants have taken overt acts manifesting this intent, such as entering into exclusivity agreements and through statements made by the city to AmeriCare in response to its request to be placed in rotation.

64. Defendants' concerted action had the necessary and direct effect of entrenching their monopoly power.

65. The market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

66. AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

67. AmeriCare has been harmed by Defendants' willful maintenance of the monopoly and their exclusion of all competitors.

68. Defendants acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS.

69. Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

70. The Local Government Antitrust Immunity Act, 15 U.S.C. § 36, does not apply because the city is (a) engaging in *ultra vires* acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant.

Bona Law PC
BusinessJustice.com

# COUNT IV

## Conspiracy to Restrain Trade, 15 U.S.C. § 1

71.　　Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

72.　　Defendant City of Anaheim, a horizontal and vertical competitor of AmeriCare, and Defendant CARE, a horizontal competitor of AmeriCare, combined and conspired to restrain trade in violation of Sherman Act § 1 by engaging in a scheme to exclude all competition from the market for prehospital EMS in the area comprising Anaheim.

73.　　Defendants' agreement and actions in furtherance of the conspiracy foreclosed 100% of the market for prehospital EMS in the area comprising Anaheim.

74.　　The market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

75.　　AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

76.　　AmeriCare has been harmed by Defendants' willful maintenance of the monopoly and their exclusion of all competitors.

77.　　Defendants acted in direct contravention of the clearly articulated policy of the State of California with regard to displacement of competition for prehospital EMS.

78.　　Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

79.     The Local Government Antitrust Immunity Act, 15 U.S.C. § 36, does not apply because the city is (a) engaging in *ultra vires* acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant.

## COUNT V

## Unfair Competition, Cal. Bus. & Prof. Code § 17200

80.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

81.     Defendants' conduct constitutes unfair, unlawful, and/or fraudulent business practices within the meaning of California Business & Professions Code § 17200.

82.     Defendant City of Anaheim was acting as a market participant rather than in its capacity to govern, and therefore is a "person" under § 17200.

83.     As a result of those practices, AmeriCare suffered damages in an amount to be determined at trial and is entitled to reasonable attorney's fees.

## COUNT VI

## Declaration of Rights, Cal. Civ. Proc. Code § 1060

84.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

85.     California Health & Safety Code Section 1797.224 provides that "[a] local EMS agency may create one or more exclusive

operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan."

86.     OCEMS has designated AO1, the area comprising Anaheim, as non-exclusive and has duly licensed AmeriCare as a prehospital EMS provider which the City of Anaheim must place in rotation upon its request.

87.     Defendant City of Anaheim incorrectly argues that Section 1797.224 does not apply to it.

88.     AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city does not have any rights under Section 1797.201.

## COUNT VII

## Declaratory Judgment, 28 U.S.C. § 2201

89.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

90.     An actual and justiciable controversy exists between AmeriCare and Defendants concerning Defendants' violations of federal antitrust law and the California EMS laws.

91.     Contrary to the city's assertions, it has not retained any rights or powers under Section 1797.201.

92.     Contrary to the city's assertions, it does not have the authority to create an exclusive operating area.

93.     Contrary to the city's assertions, AmeriCare is entitled to be placed into rotation in AO1, which is designated as non-exclusive by OCEMS.

94.     Contrary to the city's assertions, it is not grandfathered because it did not have an existing EMS service that has been provided uninterrupted since January 1, 1981.

95.     Contrary to the city's assertions, it has attempted and succeeded at maintaining an illegal monopoly in restraint of interstate commerce that is not immune from liability under the state action doctrine.

96.     Defendants' actions and assertions described above have caused, and will continue to cause, irreparable harm to AmeriCare and the public. AmeriCare has no adequate remedy at law.

97.     AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city does not have any rights under Section 1797.201. Moreover, AmeriCare seeks a declaration from this Court that Defendants have attempted and maintained an illegal monopoly under Section 2 of the Sherman Act, and a conspiracy to restrain trade under Section 1 of the Sherman Act, for which they are not entitled to immunity under the state action doctrine or the Local Government Antitrust Immunity Act.

## REQUEST FOR RELIEF

**WHEREFORE**, AmeriCare requests that this Court:

A.      Enter a temporary restraining order against Defendants to enjoin them from continuing their illegal acts under 15 U.S.C. § 26;

BONA LAW PC
BUSINESSJUSTICE.COM

B.      Declare that Defendants' conduct violates Section 2 of the Sherman Act and California Health & Safety Code Sections 1797.201 and 1797.224;

C.      Declare that the city is not entitled to immunity from damages, interest, fees, and costs under 15 U.S.C. § 36 because it is acting as a market participant rather than a government entity that is merely regulating or interacting with private actors or because its acts were *ultra vires* under California law;

D.      Enter judgment against Defendants;

E.      Award AmeriCare compensatory damages in three times the amount sustained by it as a result of Defendants' actions, to be determined at trial as provided in 15 U.S.C. §§ 15(a) and 26;

F.      Award AmeriCare pre- and post-judgment interest at the applicable rates on all amounts awarded, as provided in 15 U.S.C. §§ 15(a) and 26;

G.      Award AmeriCare its costs and expenses of this action, including its reasonable attorney's fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. §§ 15(a) and 26;

H.      Grant permanent injunctive relief under 15 U.S.C. § 26 to prevent the recurrence of the violations for which redress is sought in this complaint; and

I.      Order any other such relief as the Court deems appropriate.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

DATED: September 13, 2016        Bona Law PC

*/s/ Jarod Bona*
JAROD BONA

4275 Executive Square, Suite 200
La Jolla, CA 920370
858.964.4589
858.964.2301 (fax)
jarod.bona@bonalawpc.com

*Attorney for Plaintiff*

EXHIBIT A



THE COUNTY COUNSEL
COUNTY OF ORANGE
333 W. SANTA ANA BLVD., SUITE 407
SANTA ANA, CA 92701
MAILING ADDRESS: P.O. BOX 1379
SANTA ANA, CA 92702-1379
(714) 834-3300
FAX: (714) 834-2359

James C. Harman
Assistant
(714) 834-5257

February 22, 2016

LEON J. PAGE
COUNTY COUNSEL

ANN E. FLETCHER
JACK W. GOLDEN
MARIANNE VAN RIPER
SENIOR ASSISTANTS

JAMES C. HARMAN
ASSISTANT

KAREN L. CHRISTENSEN
JAMES C. HARVEY
ADRIENNE SAURO HECKMAN
MARK R. HOWE
LAURA D. KNAPP
THOMAS A. "MAT" MILLER
NICOLE A. SIMS
DANA J. STITS
SUPERVISING DEPUTIES

JASON C. BROWN
DIRECTOR OF ADMINISTRATION

JANELLE B. PRICE
LAURIE A. SHADE
DANIEL H. SHEPHARD
JOYCE RILEY
STEVEN C. MILLER
CAROLYN S. FROST
ROBERT N. ERVAIS
NIKHIL G. DAFTARY
JEANNIE SU
WENDY J. PHILLIPS
TERI L. MAKSOUDIAN
ANGELICA CASTILLO DAFTARY
MICHAEL A. HAUBERT
RYAN M. F. BARON
BRAD R. POSIN
SAUL REYES
AURELIO TORRE
MARK D. SERVINO
DEBBIE TORREZ
JACQUELINE GUZMAN
ANDREA COLLER
PAUL M. ALBARIAN
D. KEVIN DUNN
LORI A. TORRISI
MASSOUD SHAMEL
SHARON VICTORIA DURBIN
REBECCA S. LEEDS
NICOLE M. WALSH
ELIZABETH A. PEREAU
LAUREN C. KRAMER
GABRIEL J. BOWNE
JULIA C. WOO
LAUREL M. TIPPETT
MARK A. BATARSE
ADAM C. CLANTON
KRISTEN K. LECONG
ERIC A. DIVINE
JAMES D. P. STEINMANN
VANESSA D. ATKINS
SUZANNE E. SHOAI
DEBORAH B. MORSE
MATTHEW S. SPRISSLER
KAYLA N. WATSON
CAROLYN M. KHOUZAM
ANNIE J. LOO
RONALD T. MAGSAYSAY
JOHN P. CLEVELAND
SAMARA BELGARDE
CHRISTOPHER S. ANDERSON
JUSTIN A. GRAHAM
BRITTANY McLEAN
JEFFREY A. STOCK
MARK N. SANCHEZ
GOLNAZ ZANDIEH
CYNTHIA G. INDA
DEPUTIES

Mr. Stephen M. Wontrobski
27132 Sombras
Mission Viejo, CA 92692

Re:   Costa Mesa and Health and Safety Code section 1797.201

Dear Mr. Wontrobski:

On February 11, 2016, you wrote a letter to Mark Refowitz, Director of the Orange County Health Care Agency, inquiring whether the City of Costa Mesa can legitimately claim rights to administer emergency ambulance contracts under Health and Safety Code section 1797.201 (".201"). Since you have raised a legal issue, we agree with Mr. Refowitz that it would be appropriate for our office to address your inquiry.

In your letter, there is an assumption that Orange County Emergency Medical Services ("OCEMS" the Board of Supervisors-designated local emergency services agency for the County of Orange) has concluded Costa Mesa lacks rights to administer emergency ambulance contracts under .201. In other words, you believe OCEMS denies Costa Mesa's claims of having ".201 rights." You also believe the OCEMS 2014 Emergency Medical Services System Plan (the "Plan") rejects any claim that Costa Mesa has .201 rights.

We are unaware of any instance where OCEMS issued an opinion on Costa Mesa's .201 rights. The Plan does not classify cities or areas as having ".201 rights." Rather, it classifies ambulance operating areas as either OCEMS-administered or city administered. (Plan, Pages 256-257 (copies of which are attached).) The Plan classifies Costa Mesa as a city administered operating area for ambulance services. (Plan, Page 229 (attached).)

Please note that the designation of operating areas as "city administered" rather than those exercising ".201 rights" is not an effort in semantics by OCEMS. The designation reflects two facts. First, cities that are designated as "city administered" do, in fact, administer the emergency ambulance services contracts for ambulances operating within their cities' boundaries. Second, OCEMS does not currently believe the determination of which cities can legitimately claim .201 rights is one to be made by a local emergency medical services agency.

Exhibit A   Page 23

Mr. Stephen M. Wontrobski
February 22, 2016
Page 2

The State Emergency Medical Services Agency ("EMSA") notified OCEMS and other local emergency medical services agencies across the state that EMSA will evaluate cities' claims to .201 rights. For instance, EMSA concluded the City of Garden Grove is ineligible to claim .201 rights. EMSA reached this conclusion after performing an evaluation of information provided by OCEMS and the City of Garden Grove. EMSA has not yet provided a similar evaluation of the other Orange County cities that administer ambulance service contracts within their boundaries. Should EMSA commence a review of those cities' claims of .201 rights (including Costa Mesa), OCEMS will provide what documentation or assistance it can to EMSA.

You state in your letter that, "Costa Mesa ceded its 201 rights, when it adopted the Orange County Model Ordinance in the early 1980's by its own City Council passed resolution." According to our research, Costa Mesa passed its ambulance ordinance in 1979, before .201 was enacted in 1980 as part of the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act. In other words, the ordinance was enacted before .201 rights were created and, therefore, it would be difficult to maintain the city ceded rights that didn't exist when it adopted the ordinance. Please also note that the ordinance does not reference having the County or OCEMS administer ambulance services within city limits. Thus, assuming Costa Mesa has .201 rights, it does not appear that there is any agreement or acquiescence by the city to cede such rights to OCEMS. (*County of San Bernardino v City of San Bernardino* (1997) 15 Cal.4[th] 909, 924). The California Attorney General recently opined that such an agreement between a city and a local emergency services agency must expressly address contract administration. For instance, "a contract between a county or LEMSA and a .201 provider for medical control and oversight of the .201 provider does not extinguish the .201 provider's rights to continue providing prehospital emergency medical services." (97 Ops.Cal.Atty.Gen. 90 (2014).)

It is important to note as well that .201 rights are frequently mistaken for the right to award ambulance contract monopolies under recognized governmental immunity for anti-competitive behavior (a practice termed "exclusivity"). (See, *Community Communications Co. v. Boulder* (1982) 455 U.S. 40.) .201 rights and exclusivity are two different things. ("Section 1797.201 says nothing at all about exclusivity." (*City of Petaluma v. County of Sonoma* (1993) 12 Cal.App.4th 1239, 1244).) While cities might retain .201 rights, they do not have the ability to create exclusive operating areas that are subject to immunity from federal anti-trust claims. Under Health and Safety Code section 1797.224 (".224"), only local emergency medical services agencies such as OCEMS, acting through an EMSA-approved plan, can create exclusive operating areas. The California Supreme Court explained the interplay between .201 and .224 as, "a local EMS agency's ability to create EOA's may not supplant the cities' or fire districts' ability to continue to control EMS operations over which they have historically exercised control. Nothing in this reference to section 1797.201 suggests that cities or fire districts are to be allowed to expand their services, or to create their own exclusive operating areas." (*County of San Bernardino, supra*, 932.)

Mr. Stephen M. Wontrobski
February 22, 2016
Page 3

Accordingly, the Plan designates city-administered operating areas as either "exclusive" or "non-exclusive." Zones are non-exclusive unless a city can establish it meets one of the two criteria found in .224: 1) the city continues the use of existing providers operating in the manner and scope in which the services have been provided without interruption since January 1, 1981 (the "grandfathering" provision); or, 2) a competitive process was used to select the ambulance service provider. Only the City of Brea has provided information that qualifies for exclusivity under the grandfathering provision. For a city to qualify for exclusivity under the competitive process provision, EMSA requires the city to have used a competitive process within the last ten years. EMSA also mandates the competitive process must result in the award of the ambulance services contract to the highest ranked bidder(s). Under this EMSA-criteria, only Santa Ana and Westminster could be labeled as city administered zones enjoying exclusivity under the Plan.

You have asked about the status of requests for proposals ("RFP's") in city-administered ambulance service zones. OCEMS is aware of no current RFP's in those areas, but recently became aware that the City of Westminster may be issuing an RFP for ambulance services in 2016.

Lastly, I suspect you will have follow-up questions or requests resulting from this letter. If my suspicion is correct, it may be more efficient to meet along with OCEMS officials and discuss any questions or concerns you have. We welcome the opportunity to meet with you at the County Counsel's office at a mutually convenient time.

Very truly yours,

LEON J. PAGE
COUNTY COUNSEL

By _____

James C. Harman, Assistant

JCH:po
Attachments (2)

cc: Howard Backer, M.D., EMSA Director
    Tom Duarte, City Attorney, City of Costa Mesa

**Exhibit A  Page 25**

**PHASE 1**
**OCEMS Administered Areas: Competitive Process contracts expiring 8/31/14**
**February 2014 – December 2014**

| OA | NAME | Unincorporated Areas | Conduct RFP/ Contract Admin | Awarding Agency | Current Provider | Exclusive | RE-DESIGN 2014 |
|---|---|---|---|---|---|---|---|
| 5 | Cypress | | OCEMS | BOS | Care | X | REGION B |
| 10 | Irvine | X | OCEMS | BOS | Doctors | X | REGION C |
| 13 | La Palma | | OCEMS | BOS | Care | X | REGION B |
| 14 | Los Alamitos | X | OCEMS | BOS | Care | X | REGION B |
| 17 | Placentia | X | OCEMS | BOS | Emergency | X | REGION A |
| 19 | San Juan Capistrano | X | OCEMS | BOS | Doctors | X | REGION E |
| 21 | Seal Beach | X | OCEMS | BOS | Care | X | REGION B |
| 22 | Stanton | X | OCEMS | BOS | Care | X | REGION B |
| 23 | Tustin | X | OCEMS | BOS | Doctors | X | REGION C |
| 24 | Villa Park | X | OCEMS | BOS | Americare | X | REGION C |
| 26 | Yorba Linda | X | OCEMS | BOS | Emergency | X | REGION A |
| 28 | Laguna Hills | | OCEMS | BOS | Doctors | X | REGION D |
| 29 | Rancho Santa Margarita | X | OCEMS | BOS | Doctors | X | REGION E |
| 30 | Laguna Niguel | X | OCEMS | BOS | Doctors | X | REGION D |
| 32 | Aliso Viejo | X | OCEMS | BOS | Doctors | X | REGION D |
| 35 | Laguna Woods | | OCEMS | BOS | Doctors | X | REGION D |
| 38 | Mission Viejo | | OCEMS | BOS | Doctors | X | REGION E |
| 39 | Dana Point | | OCEMS | BOS | Doctors | X | REGION D |
| 42 | Lake Forest | X | OCEMS | BOS | Doctors | X | REGION E |

**City Administered Areas: Exclusive (Uninterrupted Existing Provider)**

| | OA# - Name | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|---|---|---|---|---|---|---|---|---|
| 2 | Brea | N/A | City | City | Emergency | X | EOA 2 | TBD |

**City Administered Areas: Exclusive (OCEMS-Approved Competitive Process)**

| | OA# - NAME | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|---|---|---|---|---|---|---|---|---|
| 20 | Santa Ana | City | City | City | Care | X | EOA 20 | TBD |
| 25 | Westminster | City | City | City | Shoreline | X | EOA 25 | TBD |

**Exhibit A  Page 26**

**PHASE 2**
**City Administered Areas: Non-Exclusive**
**January 2015**

| | OA# - NAME | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|---|---|---|---|---|---|---|---|---|
| 1 | Anaheim | | | City | Care | | OA 1 | TBD |
| 3 | Buena Park | | | City | Care | | OA 3 | TBD |
| 4 | Costa Mesa | | | City | Care | | OA 4 | TBD |
| 6 | Fountain Valley | | | City | Care | | OA 6 | TBD |
| 7 | Fullerton | | | City | Care | | OA 7 | TBD |
| 8 | Garden Grove | | | City | Care | | OA 8 | TBD |
| 9 | Huntington Beach | | | City | City | | OA 9 | TBD |
| 11 | Laguna Beach | | | City | Doctors | | OA 11 | TBD |
| 12 | La Habra | | | City | City | | OA 12 | TBD |
| 15 | Newport Beach | | | City | City | | OA 15 | TBD |
| 16 | Orange | | | City | City | | OA 16 | TBD |
| 18 | San Clemente | | | City | City | | OA 18 | TBD |

**Exhibit A  Page 27**

Stephen Wontrobski
27132 Sombras
Mission Viejo, CA 92692

February 11, 2016

Mr. Mark Refowitz
405 West 5th Street Seventh Floor
Santa Ana, CA 92801

Ref: Costa Mesa 201 Rights

Dear Mr. Refowitz:

I just want to advise you that in the January 19, 2016 Costa Mesa City Council meeting, the subject of City of Costa Mesa 201 rights came up. Costa Mesa and its City Attorney maintain that it has 201 rights. This is in direct contradiction to your County EMS plan that was approved by the State EMSA Director, that states only Brea currently has 201 rights. Hence, both your agency and the State EMSA Director maintain that Costa Mesa has no 201 rights.

With the submission of the County's EMS plan to the State Director for his approval, the County was required to verify that Costa Mesa still had 201 rights. It determined that only Brea had 201 rights. Costa Mesa did not.

I understand that Costa Mesa ceded its 201 rights, when it adopted the Orange County Model Ambulance Ordinance in the early 1980's by its own City Council passed resolution. I believe your and the State Director's determination that Costa Mesa does not have 201 rights is correct. Consequently, if this is correct, it would be illegal for Costa Mesa to issue any RFP for ambulance services.

Furthermore, it would appear that under the Butte County appellate case, the Orange County Health Care Agency would be required to issue and administer any ambulance RPP/Contract that Costa Mesa is intending to issue. Your assistance in addressing this matter will clear up a glaring interpretation conflict regarding Costa Mesa's 201 rights and who is authorized to issue and administer an RFP for ambulance services for Costa Mesa.

<u>Questions</u>

Has Costa Mesa provided your agency or the State EMSA Director with evidence that it has contracted for or provided EMS ambulance services on a continuous basis since June 1, 1980?

Is Costa Mesa or the Health Care Agency correct in the determination of Costa Mesa 201 rights?

<u>Follow-up Request</u>

Long ago I requested that you provide the status of RFP's for ambulance services for non-OCFA Orange County cities. I received no response from your agency to this letter. Consequently, I issued a follow-up letter to you requesting the status of the RFP preparation and issuance. Additional time has now passed without any response to that reminder letter to you.

An answer to my requested information will not only serve the interests of the public, but it will also provide needed information to County Counsel, the State EMSA Director, and the Board of Supervisors. Can you please respond to my RFP status information request?

Sincerely,


Stephen M. Wontrobski                                    E: ochcaCM201rights02-11-16

Cc: Tammi McConnell; EMSA Director; Costa Mesa City Council Members

**Exhibit A  Page 28**

Date: <u>2014</u>

**EMS PLAN**
**AMBULANCE ZONE SUMMARY FORM**

In order to evaluate the nature of each area or subarea, the following information should be compiled for each zone individually.  <u>Please include a separate form for each exclusive and/or nonexclusive ambulance zone.</u>

---

**Local EMS Agency or County Name:** Orange County EMS

---

**Area or Subarea (Zone) Name or Title:** OA 4 – Costa Mesa

---

**Name of Current Provider(s):**
Include company name(s) and length of operation (uninterrupted) in specified area or subarea.

Care Ambulance Service (served the area since 2008)

---

**Area or Subarea (Zone) Geographic Description:** City of Costa Mesa

---

**Statement of Exclusivity (Exclusive or Non-Exclusive [HS 1797.6]):**
Include intent of local EMS agency and board action.

Non-Exclusive

---

**Type of Exclusivity ("Emergency Ambulance," "ALS," or "LALS" [HS 1797.85]):**
Include type of exclusivity (Emergency Ambulance, ALS, LALS, or combination) and operational definition of exclusivity (e.g., 911 calls only, all emergencies, all calls requiring emergency ambulance service, etc.).

---

**Method to achieve exclusivity, if applicable (HS 1797.224):**
If <u>grandfathered</u>, pertinent facts concerning changes in scope and manner of service.  Description of current provider including brief statement of uninterrupted service with no changes to scope and manner of service to zone.  Include chronology of all services entering or leaving zone, name or ownership changes, service level changes, zone area modifications, or other changes to arrangements for service.

If <u>competitively-determined</u>, method of competition, intervals, and selection process.  Attach copy/draft of last competitive process used to select provider or providers.

---

Exhibit A  Page 29

EXHIBIT B



**1059 East Bedmar Street**
**Carson, California  90746**
**Office:  (310) 835-9390**
**Fax:  (310) 835-3926**
**Internet:  americare.org**



March 19, 2015                                                                 *Sent via e-mail to:*  pemery@anaheim.net

Paul Emery, Interim City Manager
City of Anaheim
200 South Anaheim Blvd.
Anaheim, CA 92805

Re:     Request for Rotation in OCEMS Designated Non-OCEMS Administered OA Ambulance Zone OA 1 –
          Anaheim

Dear Mr. Emery:

AmeriCare MedServices, Inc. ("AmeriCare") a privately family-owned and operated Orange County-based California Corporation which is qualified and licensed to provide emergency ambulance service throughout Orange County and that has been serving Orange County since its corporate organizational formation in 1996.

We are writing to you today at the direction of Dr. Samuel Stratton, Medical Director, Orange County EMS ("OCEMS") a division of the Orange County Health Care Agency.  As you may know, the Orange County Board of Supervisors has designated OCEMS to serve as its designated Local Emergency Medical Services Agency ("LEMSA") pursuant to California Health and Safety Code section 1797.200.   In its 2014 EMS Plan, which has been submitted to and approved by the California EMS Authority pursuant to California Health and Safety Code sections 1797.250 and 1797.105, OCEMS has determined that its designated Ambulance Response Zone OA 1 – Anaheim is a non-exclusive operating zone pursuant to California Health and Safety Code section 1797.224.

Pursuant to California Health and Safety Code section 1797.94, on February 25, 2015 we submitted a written request to OCEMS wherein we sought to be placed on rotation within OCEMS designated non-exclusive Ambulance Response Zone OA 1 – Anaheim.  On March 18, 2015 we received a written reply wherein Dr. Stratton directed us to contact the City Manager for the incorporated city within the zone.  Therefore, we are requesting that the City arrange for AmeriCare to be placed into rotation for all 9-1-1 prehospital emergency medical services requests for emergency ambulance service within Zone OA 1 – Anaheim in a manner that results in AmeriCare receiving an equal proportionate share of all such 9-1-1 prehospital emergency service requests within the zone.

We are making this request as we have reason to believe that as a non-exclusive Ambulance Response Zone, whichever entity (the County or the City) has the responsibility and authority related to the oversight, regulation and administration of prehospital emergency medical services and/or emergency ambulance operations within Ambulance Response Zone OA 1 – Anaheim, also bears the liability of anti-trust claims as restrictions of trade within this Zone would not be provided with state action immunity under federal antitrust laws for such actions taken which run afoul of such federal antitrust laws.

If on the other hand, the City maintains the position that it is does not has the responsibility and authority related to the oversight, regulation and administration of prehospital emergency medical services and/or emergency

**Paul Emery, Interim City Manager, City of Anaheim**
**Subject:  OCEMS Designated Non-OCEMS Administered Ambulance Response Zone OA 1 – Anaheim**
**March 19, 2015**
**Page 2 of 2**

ambulance operations within Ambulance Response Zone OA 1 – Anaheim, upon such timely written confirmation of such a position in response to this written communication, AmeriCare will redirect its communications to the County in an effort to seek relief for our desire to enjoy the fruits of a free and competitive market for the industry in which we are engaged in.

We thank you in advance for your careful consideration of the facts and requests made herein.

Sincerely,

Mike Summers
President/CEO
AmeriCare Ambulance Service

Cc:     Samuel Stratton, MD, Medical Director, OCEMS, via e-mail at: sstratton@ochca.com
         Tammi McConnell, EMS Administrator, OCEMS, via e-mail at: TMcConnell@ochca.com
         Mark Refowitz, Director, OCHCA, via e-mail at: mrefowitz@ochca.com
         Howard Backer, MD, via e-mail at:  Howard.Backer@EMSAuthority.ca.gov

EXHIBIT C



City of Anaheim
# OFFICE OF THE CITY ATTORNEY

April 3, 2015

Mr. Mike Summers, President/CEO
AmeriCare Ambulance Service
1059 East Bedmar Street
Carson, CA 90746-3601

      Re:    City of Anaheim Ambulance Services

Dear Mr. Summers:

      The City of Anaheim (City) is in receipt of your letter dated March 19, 2015, requesting that AmeriCare MedServices, Inc. ("AmeriCare") be placed on a rotation for an equal proportionate share of all 9-1-1 prehospital emergency medical services requests for emergency ambulance service within the City pursuant to a County document. Your letter has been referred to this office.

      The City respectfully denies your request. As more fully discussed below, the City has retained the authority to contract for emergency ambulance transportation services within its territorial limits, pursuant to *Health and Safety Code* § 1797.201 (Section 201); and, in accordance with its exercise of this authority, the City currently has the exclusive right to provide emergency ambulance services within the City's jurisdiction.

      At the onset, it is important to understand the regulatory background for the provision of emergency medical services in the State of California. In 1980, the California Legislature enacted the Emergency Medical Services System and Prehospital Emergency Medical Care Personnel Act (EMS Act), which was codified as *Health and Safety Code* § 1797 et seq. This legislation was adopted for the purpose of governing most aspects of the statewide emergency medical services system at the state, county and local levels. Under this statewide system, counties are permitted to develop an emergency medical services program, and each county developing such a program is required to designate a local emergency medical services agency (LEMSA) to administer the program. In 1982, the Orange County Board of Supervisors designated the County's Health Care Agency as the LEMSA.

      A key feature of the EMS Act is to authorize the establishment of exclusive operating areas and the selection of service providers to be the exclusive operators within those areas. "Such authorization was necessary to immunize the agencies from liability under the United States Supreme Court's then recent decision holding that local governments granting monopolies would not be exempt from antitrust

00 S. Anaheim Blvd., Suite 356
naheim, California 92805

EL  (714) 765-5169
AX  (714) 765-5123

ww.anaheim.net

**Exhibit C  Page 32**

Mr. Mike Summers
April 3, 2015
Page 2

laws unless they acted pursuant to 'clearly articulated and affirmatively expressed' state policy." (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 917-918.)  In turn, the creation of exclusive operating areas was seen as necessary, for among other reasons, "to offer private emergency service providers protection from competition in profitable, populous areas in exchange for the obligation to serve unprofitable, more sparsely populated areas." (*Valley Medical Transp. v. Apple Valley Fire Protection Dist.* (1998) 17 Cal.4th 747, 759.)

It appears that your assumption that there is a rotation of ambulance providers in Anaheim is based on Orange County's 2014 Emergency Medical Services System Plan. Contrary to the County's prior plan, which designated certain functions to the Orange County Fire Authority, including the contract RFP process for cities and areas subject thereto, the 2014 plan retains the authority of the County over the process.  This change in the County's plan, as mandated by the California Emergency Medical Services Authority, was based on the California Court of Appeal decision in *County of Butte v. California Emergency Medical Services Authority* (2010) 187 Cal.App.4th 1175, which clarified that the EMS Act requires each county "to designate one local emergency medical services agency, not two such agencies sharing the statutory powers and duties of Chapter 4 of the EMS Act ..., including the establishment of [exclusive operating areas] and the designation of exclusive operators within those areas."  (187 Cal.App.4th at 1193.)  Although the California Emergency Medical Services Authority indicated that the County may contract with third parties to develop and administer RFPs, the County must provide direct oversight, monitoring and, ultimately, the selection of a provider as part of the competitive process in cities and unincorporated areas for which the County is responsible for administering pre-hospital EMS.

However, the City of Anaheim, like several other cities in Orange County, has been administering its own emergency prehospital emergency medical services for emergency ambulance service within the City, and has not delegated its authority to do so to the County LEMSA.  When enacted in 1980, the EMS Act recognized that many local agencies already had historical arrangements for the provision of their own emergency medical services, and the EMS Act intended to protect the right of such cities and fire protection districts to continue the administration of their prehospital EMS.  In brief, in Section 201, the EMS Act declares that such arrangements shall remain in place absent a decision of the City to enter into a contract with the relevant LEMSA to transfer the responsibility for administration of its services.

Section 201 states in pertinent part:

"Upon the request of a city ... that contracted for or provided, as of June 1, 1980, prehospital emergency medical services, a county shall enter into a written agreement with the city ... regarding the provision of prehospital emergency medical services for that city ....  **Until such time that an agreement is reached, prehospital emergency medical services shall be continued at not less than the existing level, and the administration of prehospital EMS by cities ...**

Exhibit C  Page 33

Mr. Mike Summers
April 3, 2015
Page 3

**presently providing such services shall be retained by those cities ....”**
(Emph. added.)

The plain wording of Section 201 allows qualifying cities to continue to contract for or provide their own ambulance and other emergency medical services if they have not entered into an agreement with the LEMSA ceding control to the LEMSA for such matters.  The California Supreme Court recognized that the decision of a city to enter into such an agreement is voluntary, and there is no statutory duty imposed on a city for requesting or reaching an agreement.  (*County of San Bernardino*, *supra*, 15 Cal.4th at 922.)

Under *Health and Safety Code* § 1797.224 (Section 224), exclusive market rights may be awarded for areas within a LEMSA’s jurisdiction to a provider that has been selected through a competitive process or to a provider that has operated in the “same manner and scope” since January 1, 1981.  If neither of these conditions is met, any qualified provider must be permitted to operate emergency ambulance services within the LEMSA’s jurisdiction.  However, these rules do not apply to certain cities and fire protection districts, including the City, that have retained the administration of their own EMS systems since June 1, 1980.

Notably, the last sentence of Section 224 reads:  “Nothing in this section supersedes Section 1797.201.”  Thus, while Section 224 speaks to the ability of a LEMSA to create exclusive operating areas, “the ability to create [exclusive operating areas] in Section 1797.224 is made expressly subject to [Section 201], and therefore ***would not permit a county or EMS agency to unilaterally displace a city ... continuing to operate emergency medical services***.” (*Valley Medical Transp.*, *supra*, 17 Cal.4th at 759 (emph. added); *County of San Bernardino*, *supra*, 15 Cal.4th at 932 [“a local EMS agency’s ability to create [exclusive operating areas] may not supplant the cities’ ... ability to control EMS operations over which they historically exercised control”]; *see*, *also*, *City of Petaluma v. County of Sonoma* (1999) 15 Cal.App.4th 1239.)

In the County LEMSA’s 2014 Plan, the City and several other Section 201 cities were not listed as exclusive operating areas under Section 224.  Nevertheless, because the City’s authority to provide EMS services is derived directly from statute (*i.e.*, Section 201) and not by the LEMSA, the County has no authority to alter or modify how emergency ambulance services are provided within the City’s jurisdiction.  A county cannot “contravene the authority of eligible [i.e., grandfathered] cities ... to continue the administration of their prehospital EMS without the latter’s consent.”  (*County of San Bernardino*, *supra*, 15 Cal.4th at 924.)  Instead, the County must accommodate the City’s authority as the County creates an integrated EMS system.

In sum, cities that retain their right to administer their own EMS systems under Section 201 are not subject to the requirements of Section 224.  In contrast to providers that are granted exclusive market rights by a LEMSA under Section 224, there is no requirement that a provider granted exclusive market rights by a Section 201 city be selected through a competitive process

**Exhibit C  Page 34**

Mr. Mike Summers
April 3, 2015
Page 4

or meet any "manner and scope" requirements.  Rather, Section 201 cities are free to contract with any qualified company they choose.

Therefore, those cities in Orange County having administered their ambulance services from and after 1980, such as the City, have the unfettered ability to continue those arrangements and are not subject to or bound by the County's RFP process.  This conclusion finds support in a recent opinion of the California Attorney General.  In Opinion No. 11-707 (December 16, 2014), the Attorney General declares:  "Cities … that have been providing prehospital emergency medical services since June 1, 1980 … are not required by state regulation to have a written agreement with a [LEMSA] in order to 'participate in the EMS system' as specified in [Section 201]."  The Attorney General observed that until and unless a Section 201 city requests such a written agreement, the city "retains the right to administer prehospital EMS within its borders." (Quoting, *County of San Bernardino*, *supra*, 15 Cal.4th at 925.)

A Section 201 city that provides services either directly or through a private contractor is not required to open up its jurisdiction, on a rotation or any other basis, to additional providers.  In addition to the authority conferred by Section 201, a city's authority to exclusively contract for emergency ambulance services is established by Government Code section 38794, which states as follows:  "The legislative body of a city may contract for ambulance service to serve the residents of the city as convenience requires."

The City disagrees with your assertion that the City is exposing itself to antitrust liability by not acquiescing to your demand and instead maintaining its current contract for exclusive emergency ambulance services.  As the U.S. Court of Appeals for the Ninth Circuit has stated, *Government Code* § 38794 "affirmatively authorizes cities to provide ambulance services to their residents and further authorizes the elimination of competition" within the city's jurisdiction in so doing.  (*Spring Ambulance Service v. City of Rancho Mirage* (9th Cir. 1984) 745 F.2d 1270, 1273; *see, also*, *Gold Cross Ambulance v. City of Kansas City* (8th Cir. 1983) 705 F.2d 1005.)  Moreover, since Section 224 is made expressly subject to Section 201, the City and other Section 201 cities enjoy state action immunity from antitrust challenge when it awards an exclusive emergency ambulance service contract.  (*See*, *Health & Saf. Code* § 1797.6.)  Additionally, you should be aware that California's antitrust laws do not apply to municipalities.  (*E.g.*, *Penn v. City of San Diego* (1987) 188 Cal.App.3d 636; *People v. City and County of San Francisco* (1979) 92 Cal.App.3d 913; *Widdows v. Kock* (1968) 253 Cal.App.2d 228.)

Notwithstanding its ability to continue the administration of emergency ambulance services, the City acknowledges that it is subject to the provisions of the EMS Act relating to so-called "medical control," which is exercised by LEMSAs (here, the County of Orange) under the direction of a medical director with regard to such matters as dispatch and patient destination policies, patient care guidelines, and quality assurance requirements.  (*Valley Medical Transp.*, *supra*, 17 Cal.4th at 755; *County of San Bernardino*, *supra*, 15 Cal.4th at 926-927; *Health & Saf. Code* § 1797.220.)

**Exhibit C  Page 35**

Mr. Mike Summers
April 3, 2015
Page 5


It appears you believe that certain agreements between the County of Orange and Section 201 cities implementing the County's medical control over emergency medical services somehow authorize the County to administer the RFP process and award contracts for those cities' emergency ambulance services.  Such a belief would be erroneous.  Agreements between the County and Section 201 cities concerning the provision of medical control do not operate to waive or extinguish those cities retention of their rights to continue to administer contracts for emergency ambulance services.  The County's medical control policies and procedures cannot interfere with the City's internal administrative matters.  In short, statutory language, case law and the California Attorney General clearly reject your apparent position.

Please feel free to contact me if you have any questions concerning the matters discussed above.

Very truly yours,

Michael R.W. Houston, City Attorney


By: _____
Robert J. Tyson
Deputy City Attorney

RJT

cc:     Samuel J. Stratton, MD, MPH, Orange County Health Care Agency
        Tammi McConnell RN, MSN, EMS Administrator, Orange County Health Care Agency
        Paul Emery, Interim City Manager
        Michael R. W. Houston, City Attorney
        Randy Bruegman, Fire Chief
108784v1

Exhibit C  Page 36