Jarod Bona (234327)
jarod.bona@bonalawpc.com
Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
858.964.2301 (fax)

William A. Markham (132970)
wm@markhamlawfirm.com
Law Offices of William Markham, P.C.
550 W. C Street, Suite 2000
San Diego, CA 92101
619.221.4400

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| AmeriCare MedServices, Inc., | Case No.: 8:16-cv-01703 JLS (AFMx) |
| *Plaintiff*, | **Amended Complaint** |
| vs. | |
| City of Anaheim and CARE Ambulance Service, Inc., | JURY TRIAL DEMANDED |
| *Defendants*. | |

Plaintiff, AmeriCare MedServices, Inc. ("AmeriCare"), alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

AmeriCare seeks relief from the City of Anaheim and CARE Ambulance Service, Inc. ("CARE") under Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Section 2"). Abusing its police and regulatory powers, and by a willful misinterpretation of California regulatory law, the city has conferred a monopoly concession on a sole provider of prehospital emergency medical services ("EMS") in the Anaheim area. The city in turn imposes additional fees and provides compulsory ancillary services to the captive customers of its mandatory provider. The provision of these services in this region constitutes a distinct service market. Because of its challenged conduct, the city's preferred provider, CARE, holds an absolute monopoly as the only permitted provider in this market. Since establishing its monopoly, CARE has imposed supracompetitive prices—*i.e.*, prices that it could not durably charge in a competitive market. It has also reduced the quality of care and the availability of ambulances. AmeriCare, a wrongly excluded provider of these services, therefore seeks appropriate relief under Section 2.

California has a comprehensive statutory scheme (the "EMS Act") that is supposed to regulate and supervise the provision of EMS. Any local public agency that fulfills its duties under the EMS Act is immune from the reach of federal antitrust law under the doctrine of state-action immunity. But in this matter the city has flouted its

obligations under the EMS Act, has not even arguably acted in accordance with it, and therefore cannot claim state-action immunity. Rather, its conduct must be measured against the well-settled standards of Section 2, which forbids any legal person to acquire or maintain a monopoly position by means of wrongful exclusionary conduct, and which also forbids two or more legal persons to conspire in order to acquire a monopoly position by wrongful exclusionary conduct.

In this matter, the city has acted as a market-participant by providing ancillary services and imposing fees on the captive customers of its mandatory provider. Since it has acted as a market-participant, it should be held to the same standards of liability as other market-participants. There is no principled basis for drawing any distinction between a public and private market-participant when both fulfill the same function in furtherance of the same ends—generating profits by rendering valuable commercial services. AmeriCare therefore asks that the Court recognize a market-participant exception to the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34–36 (the "LGAA"), and on this basis it has requested damages and other relief under 15 U.S.C. § 15(a). AmeriCare also seeks permanent injunctive relief and declaratory relief under 15 U.S.C. § 26 as well as related declaratory relief.

The State of California created a scheme by which it and its political subdivisions ensure that California citizens receive the prehospital EMS to which they are entitled. Under that scheme, the state gave its local EMS authorities—subject to supervision and

approval by the California Emergency Medical Services Authority ("EMSA")—authority to determine which areas within its jurisdiction should be "exclusive operating areas" subject to a competitive bidding process or grandfathering, and which areas should be non-exclusive operating areas in which multiple qualified providers operate to provide the swiftest emergency response. With the exception of grandfathered areas where the same service provider has been providing service without interruption since January 1, 1981, competition is the state policy.

Defendant City of Anaheim eschewed the State of California's competition policy—and the determinations made by its state and local EMS authorities—and instead conspired with Defendant CARE Ambulance Services, Inc. to monopolize the market and exclude other providers. Although the city did not "contract[] for or provide[]" prehospital EMS as of June 1, 1980, it asserts that it retains control of those services. The city had an informal understanding, and no written contract, with a private ambulance company until 1998. In 1998, the city awarded an exclusive contract to CARE—in conjunction with its own fire department—in direct violation of state law. In doing so, it created an illegal monopoly in violation of Section 2.

In 2013, EMSA notified the Orange County Emergency Medical Services Agency ("OCEMS") that EMSA has conclusively determined that Zone AO1 is a non-exclusive area in which any county-qualified EMS provider is entitled to be placed in rotation upon request because the area did not qualify for the granting of exclusivity.

The city—recalcitrant to ceding control that the State of California has determined should instead be provided in a competitive market—refuses to place Plaintiff AmeriCare into the rotation for AO1. The city falsely claims that it maintains its "rights" under California Health & Safety Code Section 1797.201. But the city never had those rights because it was not contracting for or providing its own prehospital EMS services as of June 1, 1981. *See* Cal. Health & Safety Code § 1797.201. Moreover, regardless of whether the city retained .201 rights, it may only operate as an exclusive operating area if either (a) "a competitive process is utilized to select the provider or providers" or (b) OCEMS "develops or implements a local plan that continues the use of existing providers operating within [the] area in the manner and scope in which the services have been provided without interruption since January 1, 1981." Cal. Health & Safety Code § 1797.224.

The city has not utilized a competitive process and has not carried on with an existing service provider without interruption since before January 1, 1981. As the state authority making such determinations, EMSA has accordingly determined that the City of Anaheim does not meet either exception for exclusivity.

Defendants established an illegal monopoly with 100% market power and an ability to raise prices above market levels—and are currently double-billing patients—in AO1, while providing minimal quality and speed of service without regard to market demand. In direct contravention of State of California policy, the city displaced all competition in the market for prehospital EMS in the area comprising

Anaheim. As a result, consumers of prehospital EMS in the relevant market pay supracompetitive prices and suffer slower response times and lesser quality emergency services than those provided in a competitive market.

This is an action for damages, declaratory, and injunctive relief for monopolization and conspiracy to restrain trade under Sections 1 and 2 of the Sherman Act and certain state law claims.

## JURISDICTION AND VENUE

1.      This Court has primary subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 because this action arises under the antitrust laws of the United States.

2.      This Court has supplemental jurisdiction over the state law claims of this complaint under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the antitrust claim such that they form part of the same case or controversy.

3.      Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 15, 22 because Defendants transact business in this district and because a substantial part of the events giving rise to this complaint occurred in this district. More specifically, Defendants monopolized a geographic market within this district.

4.      Defendants are subject to personal jurisdiction in California because (a) Defendant City of Anaheim is a California city with a California address that conducts business in California and (b)

Defendant CARE is a California corporation doing business in the State of California.

## PARTIES

5.      Plaintiff, AmeriCare MedServices, Inc., is a family-owned, Orange County-based California corporation qualified and licensed to provide emergency ambulance service throughout Orange County. AmeriCare has been serving Orange County since its formation in 1996.

6.      Defendant City of Anaheim is a California charter city with its principal place of business at 200 South Anaheim Boulevard, Anaheim, California.

7.      Defendant CARE Ambulance Service, Inc. is a California corporation with its principal place of business at 1517 West Braden Court, Orange, California.

8.      Defendants and their employees and agents participated personally in the unlawful conduct challenged in this complaint and, to the extent they did not personally participate, they authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts complained of in this complaint.

9.      Each Defendant acted as the principal of or agent for each other Defendant as to the acts, violations, and common course of conduct alleged in this complaint.

## SUBSTANTIVE ALLEGATIONS
### The Statutory Scheme

10.     Prior to 1980, the law governing prehospital EMS in California was haphazard; cities, counties, and public districts were

not required to, and had little guidance or means to, coordinate or integrate their operations.

11.     In 1980, the California legislature imposed a new scheme for the provision of prehospital EMS designed to create a new coordinated system for the provision of prehospital EMS with its passage of the Emergency Medical Services System and the Pre-Hospital Emergency Medical Care Personnel Act.

12.     The act created a new manner of local administration of prehospital EMS, providing two tiers of governance: (1) the EMSA, and (2) the local EMS agency, in this case the OCEMS section of the Orange County Department of Health.

13.     Among the EMSA's duties are the power to review and approve the prehospital EMS plans submitted by local EMS agencies to determine whether the plans "effectively meet the needs of the persons served" and are consistent with the law and Authority guidelines and regulation.

14.     The local EMS agency, on the other hand, has the power and responsibility to provide prehospital EMS throughout its area of responsibility. It develops and submits for approval its plan for prehospital EMS in the area of its responsibility.

15.     The legislative scheme allows a local EMS agency to designate one of two modes for the provision of EMS services in any particular geographic area within its purview: (1) exclusive operating areas and (2) non-exclusive operating areas.

16.     In effect, an exclusive operating area allows the local EMS to create monopolies in the provision of prehospital EMS

*provided* that the local EMS uses a competitive process for awarding those monopolies. Cal. Health & Safety Code § 1797.224. The local EMS can also designate an exclusive operating area through "grandfathering" an area in which a particular provider or providers have been operating without interruption since January 1, 1981. *Id.*

17.     In non-exclusive operating areas, prehospital EMS providers compete in an open market. In Orange County, these private ambulance services are subject to a rigorous licensing and qualification process and must provide services according to rates predetermined by OCEMS. AmeriCare is fully licensed and qualified by OCEMS.

18.     Under the scheme, the local EMS agency must define and describe each operating area within its jurisdiction in its local EMS plan submitted to EMSA. It must designate each area as exclusive or non-exclusive.

19.     Mindful that the new prehospital EMS scheme relies on a competitive marketplace that would supplant existing services in some municipalities, the legislature made one narrow exception to the system of local EMS agency control: a municipality that had contracted or provided for its own prehospital EMS as of June 1, 1980 could choose whether to continue administering its own prehospital EMS or to enter into an agreement with the local EMS agency. *See* Cal. Health & Safety Code § 1797.201. Cities that chose to retain their power to administer prehospital EMS colloquially call this power ".201 rights."

20.     But this control does not allow cities to create monopolies by their own fiat. Section 1797.224 allows ***only*** local EMS agencies such as OCEMS, acting through an EMSA-approved plan, to create exclusive operating areas:

> A local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan. No competitive process is required if the local EMS agency develops or implements a local plan that continues the use of existing providers operating within a local EMS area in the manner and scope in which the services have been provided without interruption since January 1, 1981.

Cal. Health & Safety Code § 1797.224.

21.     The California Supreme Court has explained that while

> a local EMS agency's ability to create [exclusive operating areas] may not supplant the [cities'] ability to continue to control EMS operations over which they have historically exercised control[, n]othing in this reference to section 1797.201 suggests that cities . . . are to be allowed to expand their services, or to create their own exclusive operating areas.

*Cty. of San Bernardino v. City of San Bernardino*, 15 Cal. 4th 909, 932 (1997).

22.     Therefore, even where a city retains .201 rights, operating areas can only be designated as exclusive by the local EMS if the city can establish either (1) grandfathering, or (2) that it utilized a competitive process to select its current provider in the last ten years.

23.     Otherwise, the operating area must be designated as a non-exclusive operating area in which restraints of trade imposed by a local government entity are not immune from antitrust liability under the state action doctrine.

24.     Moreover, EMSA and OCEMS have each taken the position that "OCEMS may not delegate its statutory authority to conduct competitive processes for emergency ambulance services" to the cities or other agencies. Accordingly, an exclusive operating area must either be subject to (a) grandfathering, or (b) an OCEMS-administered competitive bidding process. Neither applies here.

25.     The EMS Act explicitly decrees that it is intended to establish a comprehensive system for regulating and supervising the provision of EMS in California. *See* Cal. Health & Safety Code §1797.6. The various workings of the EMS Act confirm that, except for "grandfathered" providers, competitive bidding and open competition among qualified providers are supposed to be industry standards for the provision of EMS in California. *See generally id*. § 1797 *et seq*. The EMS Act thus promulgates a policy of competitive bidding and open competition that is actively monitored and supervised by the EMSA and the local EMSAs. *See id*. The EMS Act further decrees that: (1) it is intended to establish a fully regulated, actively supervised system

for providing EMS in California; and (2) in accordance with the doctrine of state-action immunity, the federal antitrust laws should not reach "activities undertaken by local governmental entities *in carrying out their prescribed functions under [the EMS Act]*." *Id.* § 1797.6 (emphasis supplied). As explained fully in this complaint, the city did not engage in the challenged conduct in furtherance of any duty it owed or any role properly assigned to it under the EMS Act, nor did it engage in any "activity" in order to "carry out" of any its "prescribed functions" under the EMS Act, but rather it disregarded and flouted its obligations under the EMS Act while invoking spurious legal rationales to justify its conduct. It even disregarded specific directives of its local EMSA (the OCEMSA) by failing to operate AO1 as a non-exclusive operating area. The city is therefore unable to rely on the state-action immunity promulgated in the EMS Act. Abusing its powers, the city conferred on its joint collaborator a highly lucrative monopoly concession, established itself as the sole provider of auxiliary services at unreasonable rates, and saddled its captive customers with onerous prices and inferior service. Its conduct can and should be condemned under Section 2.

## Prehospital EMS in the City of Anaheim

26.     As of June 1 1980, the City of Anaheim had a *de facto*, unwritten agreement with Southland Ambulance to provide emergency ambulance service within Anaheim city limits.

27.     Southland was purchased in 1993 and subsequently passed through the hands of several corporate owners before merging

with its successor, American Medical Response, Inc. AMR served as the ambulance service within the city until 1998.

28.     In 1998, the City of Anaheim ceased using its existing provider and granted an exclusive contract to CARE. Its legally and factually untenable position appears to have been that (a) it had .201 rights, and (b) as a result of those .201 rights, it could establish a new monopoly.

29.     OCEMS may only designate and maintain exclusive zones in its local EMS plan—and EMSA will only approve such a designation—if a city can establish one of two criteria: (1) a competitive bidding process was used in the last ten years to contract with the highest ranked bidder, or (2) grandfathering. Under this criteria, OCEMS has determined that only the cities of Brea, Santa Ana, and Westminster could be labeled as city-administered zones enjoying exclusivity under the plan, whether due to competitive bidding or grandfathering.

30.     In May 2013, EMSA determined that AO1 failed to meet either criterion for the exclusive operating area designation under California Health & Safety Code Section 1797.224. EMSA subsequently approved the OCEMS 2014 Orange County EMS plan with AO1 designated as a non-exclusive operating area.

31.     The city and CARE are joint market participants. The city's fire department provides emergency medical response while CARE provides both response and transport. If a fire-department paramedic assesses the patient and provides at least one intervention, the patient is charged for the city's paramedic response fee as well as

that of CARE (and including its transport fees). In other words, in a substantial number of situations, a patient is double-billed for care they receive prehospital.

32.     The city's agreement with CARE allows them to split monopoly profits while allowing additional charges to third-party payors such as Medicare. As part of this agreement, CARE invoices patients twice: (1) on its own invoice for all prehospital EMS services rendered, including a "medical supplies" fee, and (2) on an Anaheim Fire Department invoice for the additional paramedic "response" charge. CARE, in turn, pays the city the extra paramedic "response" charge when applicable and the "medical supplies" fee for every call.

33.     The medical supplies fee alone represents monopoly rents of about $300,000 per year for the city that consumers and payors would not have been charged but for Defendants' conduct.

34.     Additionally, the city profits from a "paramedic membership program" whereby Anaheim residents can pay a $3.00 monthly fee as part of their utility bill to offset the expenses of the fire department's emergency medical care. The fee does not offset any costs billed to program participants by CARE.

35.     Moreover, CARE provides kickbacks to members of city government in the form of campaign contributions with the mutual understanding that the contributions secure CARE's continued role.

36.     The city has refused to place any other private ambulance company in the rotation for service calls, illegally maintaining a monopoly in a non-exclusive zone.

### City of Anaheim Excludes AmeriCare

37.     AmeriCare submitted a written request to OCEMS February 25, 2015 to be placed on rotation within AO1, the non-exclusive operating area comprising Anaheim. OCEMS replied March 18, 2015 directing AmeriCare to contact the city manager for the incorporated city within the zone.

38.     Although OCEMS has the responsibility and authority to administer non-exclusive zones not retained by cities validly exercising .201 rights, OCEMS has entered into agreements in which it allows certain cities to administer, in part, the provision of prehospital EMS within its jurisdiction. OCEMS calls these areas "city administered" and the Orange County attorney has expressly disclaimed that "city administered" is not a determination regarding .201 rights. Instead, "OCEMS does not currently believe the determination of which cities can legitimately claim .201 rights is one to be made by [it]." *See* Ex. A at 1. OCEMS nevertheless continues to assert its sole authority to determine exclusivity because ".201 rights and exclusivity are two different things." *Id*. at 2.

39.     AmeriCare submitted its written request to Paul Emery, interim city manager of City of Anaheim March 19, 2015, explaining its correspondence with OCEMS and requesting that either the city arrange for AmeriCare to be placed into the prehospital EMS rotation or state a position that it does not have responsibility for the administration of prehospital EMS. Ex. B.

40.     The city sent a scathing response in which it asserted, contrary to well-established law, that it has the authority to designate

its own exclusive area and to do so without any competitive process. Moreover, it stated that a city retaining .201 rights "is not required to open up its jurisdiction, on a rotation or any other basis, to additional providers." Ex. C at 4.

41.     But for Defendants' conspiracy to monopolize the market, AmeriCare and other private ambulance providers would have been placed in rotation and patients would have paid lower prices for faster and better service. During periods of higher volume, more ambulances would have been available from other providers and patients would have been stabilized and transported for hospital care more quickly.

42.     AmeriCare lost business as a result of Defendants' actions.

## Claims Limitation Not Applicable

43.     AmeriCare has complied with all applicable presentation of claims to local governments' requirements under California law. The City of Anaheim denied AmeriCare's claim on March 14, 2016.

## COUNT I

## Monopolization, 15 U.S.C. § 2

44.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

45.     Section 2 of the Sherman Act, 15 U.S.C. § 2 provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person

or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . .

46.     Defendants possess monopoly power in the market for prehospital EMS in the Anaheim area. The city has the power to exclude competition and has exercised that power in favor of itself and CARE, which together hold 100% market power in the area comprising Anaheim.

47.     In the present matter, the relevant service market is the provision of EMS (broadly speaking, ambulance services and related prehospital emergency medical services).

48.     EMS are services rendered to people who have suffered a medical emergency and require immediate treatment and rapid transport to a nearby hospital. The highly skilled medical professionals who render these services must receive compulsory education, training and licensure before they can offer them. The providers of these services must fulfill numerous regulatory requirements and carry compulsory insurance.

49.     Above all, the city acts as an effectual gatekeeper that determines which providers can operate in AO1. Practically speaking, most calls for emergency service and EMS are made to the city's emergency lines, such as 911. It is the city that dispatches these emergency calls and otherwise uses its police and regulatory powers to ensure that only the provider(s) of whom it has approved can render EMS in its area. If a person requires EMS in AO1, it must rely on such

EMS as the city will arrange to provide for it, owing to the manner in which the city has handled this matter, as pled fully above.

50.     There is no other service of any kind that can serve as a reasonably interchangeable substitute for EMS. No matter how high the price of these services, those who require them cannot turn to an alternative service. There is no cross-elasticity of demand between EMS and any other service.

51.     The relevant geographic market is AO1—which is the Anaheim area. People within this area who require EMS will inevitably be served only by the city's designated provider of these services—the city itself. No other provider is permitted to serve the area.

52.     Therefore, the relevant market at issue in this case is the provision of EMS in AO1 (the "Market").

53.     Through the conduct described herein, Defendants have willfully maintained that monopoly power by anticompetitive and exclusionary conduct. They acted with the intent to maintain this monopoly power, and the illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act.

54.     Through the conduct described herein, Defendants have willfully maintained that monopoly power by anticompetitive and exclusionary conduct. They acted with the intent to maintain this monopoly power, and the illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act.

55.     The Market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

56.     AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

57.     AmeriCare has been harmed by Defendants' willful maintenance of their monopoly and their exclusion of all competitors.

58.     Defendants acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS, and therefore are not entitled to immunity under the state action doctrine.

59.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

60.     The Local Government Antitrust Act, 15 U.S.C. §§ 34–36, does not apply because the city is (a) engaging in ultra vires acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant by conducting a *de facto* joint commercial venture with CARE, as pled more fully above.

61.     CARE's conduct in this matter is not protected by the *Noerr-Pennington* immunity. AmeriCare does not complain of any lobbying effort or petition to the city that CARE might have made or against any other protected "political activity" that it might have undertaken. AmeriCare complains only against CARE's unlawful possession of monopoly power in the Market—*i.e.*, it challenges

commercial practices conducted in commerce, not protected "political activity."

## COUNT II

## Attempted Monopolization, 15 U.S.C. § 2

62.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

63.     Defendants have willfully engaged in a course of conduct, including anticompetitive and exclusionary actions, with the specific intent of monopolizing the market for prehospital EMS in the area of Anaheim, and there is a dangerous probability that, unless restrained, anticompetitive conditions will occur, in violation of Section 2 of the Sherman Act.

64.     The market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

65.     AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

66.     AmeriCare has been harmed by Defendants' willful maintenance of the monopoly and their exclusion of all competitors.

67.     Defendants acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS, and therefore are not entitled to immunity under the state action doctrine.

68.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

69.      The Local Government Antitrust Act, 15 U.S.C. §§34-36, does not apply because the city is (a) engaging in *ultra vires* acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant by conducting a de facto joint commercial venture with CARE, as pled more fully above.

70.      CARE's conduct in this matter is not protected by the *Noerr-Pennington* immunity. AmeriCare does not complain of any lobbying effort or petition to the city that CARE might have made or against any other protected "political activity" that it might have undertaken. AmeriCare complains only against CARE's unlawful possession of monopoly power in the Market—*i.e.*, it challenges commercial practices conducted in commerce, not protected "political activity."

## COUNT III

## Conspiracy to Monopolize, 15 U.S.C. § 2

71.      Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

72.      The city and CARE combined and conspired to acquire and maintain monopoly power in the market for prehospital EMS in the area comprising Anaheim, with the specific intent and purpose to exclude all other competition and monopolize the market for prehospital EMS in the area of Anaheim.

73.      Defendants have taken overt acts manifesting this intent, such as entering into exclusivity agreements and through

statements made by the city to AmeriCare in response to its request to be placed in rotation.

74.    Defendants' concerted action had the necessary and direct effect of entrenching their monopoly power.

75.    The market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

76.    AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

77.    AmeriCare has been harmed by Defendants' willful maintenance of the monopoly and their exclusion of all competitors.

78.    Defendants acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS.

79.    Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

80.    The Local Government Antitrust Act, 15 U.S.C. §§ 34–36, does not apply because the city is (a) engaging in *ultra vires* acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant by conducting a de facto joint commercial venture with CARE, as pled more fully above.

81.    CARE's conduct in this matter is not protected by the *Noerr-Pennington* immunity. AmeriCare does not complain of any lobbying effort or petition to the city that CARE might have made or against any other protected "political activity" that it might have

undertaken. AmeriCare complains only against CARE's unlawful possession of monopoly power in the Market—*i.e.*, it challenges commercial practices conducted in commerce, not protected "political activity."

**COUNT IV**

**Conspiracy to Restrain Trade, 15 U.S.C. § 1**

82.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

83.     Defendant City of Anaheim, a horizontal and vertical competitor of AmeriCare, and Defendant CARE, a horizontal competitor of AmeriCare, combined and conspired to restrain trade in violation of Sherman Act § 1 by engaging in a scheme to exclude all competition from the market for prehospital EMS in the area comprising Anaheim.

84.     Defendants' agreement and actions in furtherance of the conspiracy foreclosed 100% of the market for prehospital EMS in the area comprising Anaheim.

85.     The market has been harmed as a result of Defendants' conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

86.     AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

87.     AmeriCare has been harmed by Defendants' willful maintenance of the monopoly and their exclusion of all competitors.

88.     Defendants acted in direct contravention of the clearly articulated policy of the State of California with regard to displacement of competition for prehospital EMS.

89.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

90.     The Local Government Antitrust Act, 15 U.S.C. §§ 34–36, does not apply because the city is (a) engaging in *ultra vires* acts and therefore not acting in its official capacity, and (b) not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant by conducting a de facto joint commercial venture with CARE, as pled more fully above.

91.     CARE's conduct in this matter is not protected by the *Noerr-Pennington* immunity. AmeriCare does not complain of any lobbying effort or petition to the city that CARE might have made or against any other protected "political activity" that it might have undertaken. AmeriCare complains only against CARE's unlawful possession of monopoly power in the Market—*i.e.*, it challenges commercial practices conducted in commerce, not protected "political activity."

## COUNT V

## Declaration of Rights, Cal. Civ. Proc. Code § 1060

92.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

93.     California Health & Safety Code Section 1797.224 provides that "[a] local EMS agency may create one or more exclusive

operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan."

94.    OCEMS has designated AO1, the area comprising Anaheim, as non-exclusive and has duly licensed AmeriCare as a prehospital EMS provider which the City of Anaheim must place in rotation upon its request.

95.    Defendant City of Anaheim incorrectly argues that Section 1797.224 does not apply to it.

96.    AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city does not have any rights under Section 1797.201.

## COUNT VI

## Declaratory Judgment, 28 U.S.C. § 2201; 15 U.S.C. § 26

97.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

98.    An actual and justiciable controversy exists between AmeriCare and Defendants concerning Defendants' violations of federal antitrust law and the California EMS laws.

99.    Contrary to the city's assertions, it has not retained any rights or powers under Section 1797.201.

100.   Contrary to the city's assertions, it does not have the authority to create an exclusive operating area.

101.   Contrary to the city's assertions, AmeriCare is entitled to be placed into rotation in AO1, which is designated as non-exclusive by OCEMS.

102.   Contrary to the city's assertions, it is not grandfathered because it did not have an existing EMS service that has been provided uninterrupted since January 1, 1981.

103.   Contrary to the city's assertions, it has attempted and succeeded at maintaining an illegal monopoly in restraint of interstate commerce that is not immune from liability under the state action doctrine.

104.   Defendants' actions and assertions described above have caused, and will continue to cause, irreparable harm to AmeriCare and the public. AmeriCare has no adequate remedy at law.

105.   AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city does not have any rights under Section 1797.201.

106.   AmeriCare seeks a further declaration from this Court that the city has committed the above-pled antitrust offenses, and that it is not entitled to immunity under the state-action doctrine for these legal wrongs.

107.   AmeriCare seeks a further declaration from this Court that the city should held legally responsible for damages, costs and interest under 15 U.S.C. § 15(a), notwithstanding the LGAA, because in this matter the city has acted as a market-participant engaged in commercial activity.

## REQUEST FOR RELIEF

**WHEREFORE**, AmeriCare requests that this Court:

A.    Enter a temporary restraining order against Defendants to enjoin them from continuing their illegal acts under 15 U.S.C. § 26;

B.    Declare that Defendants' conduct violates Section 2 of the Sherman Act and California Health & Safety Code Sections 1797.201 and 1797.224;

C.    Declare that the city is not entitled to immunity from damages, interest, fees, and costs under 15 U.S.C. § 36 because it is acting as a market participant rather than a government entity that is merely regulating or interacting with private actors or because its acts were *ultra vires* under California law;

D.    Enter judgment against Defendants;

E.    Award AmeriCare compensatory damages in three times the amount sustained by it as a result of Defendants' actions, to be determined at trial as provided in 15 U.S.C. §§ 15(a) and 26;

F.    Award AmeriCare pre- and post-judgment interest at the applicable rates on all amounts awarded, as provided in 15 U.S.C. §§ 15(a) and 26;

G.    Award AmeriCare its costs and expenses of this action, including its reasonable attorney's fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. §§ 15(a) and 26;

H.    Grant permanent injunctive relief under 15 U.S.C. § 26 to prevent the recurrence of the violations for which redress is sought in this complaint; and

I.   Order any other such relief as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims.

DATED: November 21, 2016        Bona Law PC

_____
*/s/Jarod Bona*
JAROD BONA

4275 Executive Square, Suite 200
La Jolla, CA 920370
858.964.4589
858.964.2301 (fax)
jarod.bona@bonalawpc.com

William A. Markham
Law Offices of William Markham,
   P.C.
550 W. C Street, Suite 2000
San Diego, CA 92101
619.221.4400
wm@markhamlawfirm.com

*Attorneys for Plaintiff*

Amended Complaint
Case No.: 8:16-cv-01703 JLS (AFMx)

**CERTIFICATE OF SERVICE**

I am employed in San Diego County. I am over the age of 18 and not a party to the within action. My business address is 4275 Executive Square, Suite 200, La Jolla, California 92037. On November 21, 2016, I caused to be served via CM/ECF a true and correct copy of the **Amended Complaint**.

The CM/ECF system will generate a "Notice of Electronic Filing" (NEF) to the filing party, the assigned judge and any registered user in the case. The NEF will constitute service of the document for purposes of the Federal Rules of Civil, Criminal and Appellate Procedure.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of November 2016 at San Diego, California.

_____
*Gabriela Hamilton*